Lee Edward ELLIS and Lereatha Ellis *v.* Dennis J. LITER and Marlene K. Liter and Boatmen's National Bank of St. Louis

91-348                                                    841 S.W.2d 155

Supreme Court of Arkansas
Opinion delivered November 9, 1992

*Davidson Law Firm, Ltd.*, by: *Charles Phillip Boyd, Jr.*, for appellant.

*Bridges, Young, Matthews, Holmes & Drake*, by: *David L. Sims*, for appellees.

*Pierce, Stanley & Robinson*, by: *William S. Robinson*, for appellees Dennis J. Liter and Marlene K. Liter.

STEELE HAYS, Justice. Lee Edward Ellis and Lereatha Ellis brought this action alleging that a home purchased by the Ellises from Dennis and Marlene Liter and Boatmen's National Bank of St. Louis in 1979 was misrepresented. The trial court directed a verdict in favor of the Liters and Boatmen's and the Ellises have appealed. We affirm as to Boatmen's and reverse as to the Liters.

When Dennis was reassigned to another area by his employer, Southwestern Bell, Southwestern Bell offered to help with the sale of the Liters' home. The Liters agreed and Southwestern Bell secured the services of Boatmen's National Bank of St. Louis. Boatmen's worked with clients like Southwestern Bell and its employees who were relocating. Boatmen's clients would "turn over" the properties to the bank (the details of these arrangements are not explained) and the bank would seek buyers for the properties.

It appears that Boatmen's hired the Norton and Dunklin Real Estate Agency to secure a buyer for the Liter home. Norton and Dunklin were handling the Liters' house and sold it to the Ellises through one of their agents, Evelyn Edington. The offer and acceptance is signed by the Ellises as buyers, and Ms. Edington as the seller. The warranty deed reflects a sale by the Liters to the Ellises.

After the Ellises moved in they encountered problems with the house, but were unable to determine the cause. In 1987 Mr. Ellis went to the office of the city clerk and discovered a statement by a building inspector at the time the house was built referring to a crack in the foundation. Ellis also found a waiver signed by the Liters stating they were aware of the crack but would not hold anyone responsible for problems which might result. The Ellises

also learned the crack could ultimately cause serious problems and would be expensive to remedy. At that point the Ellises filed suit against the Liters and Boatmen's, charging them with misrepresentation in the sale of the home.

The case was tried on April 19, 1991. When the plaintiffs rested, both Boatmen's and the Liters moved for a directed verdict. The trial court granted the motion on the premise that the Ellises had not made a prima facie case against Boatmen's because they failed to show Boatmen's had any knowledge there was a crack in the foundation, and against the Liters because the defect was insignificant at the time the house was sold.

### The Liters

The trial court found that if in fact there had been a misrepresentation by the Liters, a directed verdict was appropriate because the misrepresentation was not a material one. The trial court expressed doubt that anyone knew it was a serious problem when the Ellises bought the house in 1979:

> Now that's sort of going in the back door, but I've been wondering all along how would they know in 1980—'89 or '87 whenever they —'70 —'78 when they sold the house, how could the Liters know that there was a significant problem that they needed to reveal to anybody.

***

> . . . I frankly doubt if the normal housewife or the normal house owner that knows nothing about concrete would be terribly disturbed about a hairline crack in the foundation.

***

> . . . Now ten years later somebody finds some little something insignificant they thought, I suppose. But you don't have a fact question to go to the jury.

We believe it was error to direct a verdict. The materiality of a misrepresentation is not a matter for the trial court but for the fact-finder. In *Southern Equipment & Tractor Co.* v. *K&K Mines*, 272 Ark. 278, 613 S.W.2d 596 (1981), we wrote:

To prove materiality of a misrepresentation, it is only necessary to show the misrepresented fact was a material *influence* on the decision; it must have been a substantial factor, but it is not necessary that it was the paramount or decisive inducement. This is a question of fact for the fact-finder. [Our emphasis.] Prosser, *Law of Torts*, 4th Ed. § 108; *also see* 37 Am. Jur. 2d *Fraud and Deceit* § § 177 and 178.

Prosser elaborates in his fifth edition at § 108:

The party deceived must not only be justified in his belief that the representation is true, but he must also be justified in taking action on that basis. This usually is expressed by saying that the fact represented must be a material one. There are misstatements which are so trivial, or so far unrelated to anything of real importance in the transaction, that the plaintiff will not be heard to say that they substantially affected his decision. Necessarily the test must be an objective one and it cannot be stated in the form of any definite rule, but must depend upon the circumstances of the transaction itself. . . . Thus, in particular cases, matters entirely collateral to a contract, and apparently of no significance to any reasonable man under the circumstances, have been held to be immaterial; the defendant's social, political and religious associations; his motive or purpose in entering into the bargain; the details of a seller's title, where good title is still conveyed; a false financial statement which still gives an accurate picture; the identity of the party for whom a purchase is made; and many other items of similar nature.

On the other hand facts to which a reasonable man might be expected to attach importance in making his choice of action, such as the identity of an individual or the directors of a corporation with whom he is dealing, the character of stock sold as treasury stock, the age, horse power and capacity of an automobile, the train service to a suburb . . . have been held to be material. The question is frequently for the jury whether the statement made might justifiably induce the action taken.

W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 108, at 753-754 (5th ed. 1984).

■ As Prosser suggests, there may be matters so clearly trivial and unimportant that they could be said to be immaterial as a matter of law, but that is not the situation before us. We cannot say as a matter of law that a defect in the foundational structure of a home can be relegated to the trivial status comparable to that discussed in Prosser, *supra*. Nor can we say as a matter of law that the Ellises were not justified in treating the defect as posing a material influence on their decision. Furthermore, Mr. Mann, the original inspector of the house, testified the crack posed a very serious problem that would be expensive to rectify. Even the Liters testified they would want to be told about such a defect. Mr. Liter testified:

> Q: Now, Mr. Liter, did you ever at any time during the course of this transaction communicate or tell Mr. and Mrs. Ellis sitting over there about this crack—this problem with the house you were selling? Did you ever tell them?
>
> A: No sir. I've never met them or even seen them before today.
>
> Q: Did you make any effort to try to tell them?
>
> A: No sir.
>
> Q: Don't you think that's something that they needed to know before they bought the house?
>
> A: Well, I certainly think so, yes, sir.
>
> Q: You didn't—in fact, you would want to know about that crack if you had been buying the house, wouldn't you?
>
> A: Yes, sir.

And Mrs. Liter testified:

> Q: Okay. I also asked at that deposition, [Mrs. Liter] if you were purchasing a house and there was a crack in the slab running the length of one of the rooms in the house, I asked you—wouldn't you want to know about it?
>
> A: Yes, I would want to know about it.

■ Whether a crack in the foundation was a material fact in this case was a question for the jury. As to the trial court's comment that even if the Liters had known about the crack there may not have been any culpable intent on their part because they thought it was not a significant problem, this too is clearly a question for the jury— a credibility matter as to the defendant's intent.

Additionally, there was actually an admission of awareness of the seriousness of the crack on the part of Mrs. Liter. She testified about appraisers who had come to the house prior to their selling to the Ellises, and stated that one of the appraisers who was aware of the crack, apparently through the inspector's note and the Liters' waiver of the previous year, commented to her about the crack and told her that he had been a building inspector and he would never have approved the house in that condition.

■ The trial court referred to the Liters having signed a waiver of liability by the builders for the defect as an indication the problem was minor. However, why the Liters ultimately signed the waiver is not revealed and the waiver alone is not sufficient to remove this issue from the jury. To the contrary, it goes to the question of credibility as to the Liters' intent. "In cases of deceit, the credibility of the witnesses is all important in determining liability, and it is the trier of fact that is the sole judge of the credibility of the witnesses and of the weight and value of the evidence." *Nicholson* v. *Century 21*, 307 Ark. 161, 818 S.W.2d 245 (1991).

## Boatmen's

The trial court granted a directed verdict for Boatmen's on grounds that the appellants had failed to prove any knowledge on Boatmen's part of the crack in the foundation. The trial court was correct.

■ When the record is read in its entirety, it is clear the appellants failed to establish that any information about the crack ever reached Boatmen's. The evidence was simply inconclusive that Boatmen's had any awareness of the original building inspector's report, or the appraiser's report. There is evidence that appraisers visited the property when the Liters planned to sell, in 1979, and that one of them mentioned the crack to Mrs. Liter at

that time. However, there is no evidence that it was Boatmen's which hired the appraisers and therefore had even constructive knowledge of the crack. While the record indicates that in all likelihood the appraisers were hired either by Southwestern Bell or Boatmen's there is nothing conclusive in the record as to hiring and a finding by a jury would be based solely on speculation.

For the same reasons, a negligence theory, which appellants also advance, must fail because the information of the crack was never shown to come within Boatmen's purview, even constructively.

Appellants argue alternatively that Boatmen's is liable under either strict liability or breach of warranty. However, these theories were not raised in the complaint nor were they argued to the trial court. *Johnson* v. *Ramsey*, 307 Ark. 4, 817 S.W.2d 200 (1991).

Reversed in part and affirmed in part and remanded.