Robert FINDLEY *v.* STATE of Arkansas

CR 91-34 818 S.W.2d 242

Supreme Court of Arkansas
Opinion delivered October 28, 1991

54

*Val P. Price*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Robert Findley, was convicted a second time of capital murder, and sentenced to life imprisonment without parole. On appeal, following Findley's first trial and conviction for this offense, we reversed and remanded for a new trial due to error in the admission of certain statements Findley made while in police custody. *See Findley* v. *State*, 300 Ark. 265, 778 S.W.2d 624 (1989).

Findley now appeals from his second conviction, asserting six points of error for reversal. None of his contentions have merit and we affirm.

Since one of Findley's arguments involves a challenge to the sufficiency of the evidence, we discuss it first.

## I. *SUFFICIENCY OF THE EVIDENCE*

■ Initially, we note that we cannot, as the State urges, decide the issue of whether the evidence was sufficient to support the verdict on law of the case principles. That doctrine applies only when the evidence in the second trial does not materially differ from the evidence presented in the first trial. *See Bussard* v. *State*, 300 Ark. 174, 778 S.W.2d 213 (1989). In the first trial of this case, the State relied heavily on three statements Findley made to the police concerning the murder. In addition, Findley testified as part of his own case-in-chief. On appeal, we ruled that although the evidence was sufficient to support the conviction, Findley's statements should have been suppressed.

At the second trial, instead of Findley's statements, the State offered the testimony of Jim Moore. Moore described the events surrounding the murder, as related to him by Findley, as well as both parties' participation in disposing of the victim's body. Findley did not testify. Although the testimony of the other witnesses in the two trials was substantially the same, the exclusion of Findley's statements and the addition of Moore's testimony upon retrial, varies such that we are required to examine the evidence anew.

■ In determining whether there is sufficient evidence to support a jury verdict, the appellate court reviews the evidence in the light most favorable to the appellee and affirms if there is substantial evidence to support it. Substantial evidence is that which is of sufficient force to compel a conclusion one way or another; it must be more than mere speculation or conjecture. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991).

Findley's conviction for capital murder arose from his participation in the robbery and shooting death of David Phillips.

Pillips' co-workers revealed that Phillips had given Findley $1,700 in cash to purchase a car for him through some contacts of Findley's in Memphis. The teller at Phillips' bank testified that Phillips had withdrawn $1,800 from his savings account on Wednesday, March 2, 1988, and mentioned buying a car in Memphis. Phillips told his co-workers that the car was to be delivered during his break that evening. They chided him about not having received a bill of sale and "getting ripped off."

When the car did not arrive that evening, Phillips left work early to investigate. Findley's ex-wife, Judy Findley Jones (they were married at the time in question), testified that she remembered Phillips coming over late one night the first week in March and discussing the car deal and the fact that "the guys at work" were teasing him about "Findley ripping off his money."

Phillips returned to work on Thursday, March 3, and told his co-workers that "everything was fine" and he was to get the car on Friday. He was last seen at work on Thursday evening.

Phillips' body was later discovered in a drainage ditch in Crawford County on March 24. It was tied and weighted with a concrete block and wrapped in plastic. Phillips had been shot twice in the upper chest, once in the neck, and once in the back. State Medical Examiner, Dr. Fahmy Malak, estimated that the body had been placed in the water less than 24 hours after Phillips died.

As prevoiusly stated, testimony concerning the actual murder came from Jim Moore. Moore testified that Findley came by his house around dusk on Saturday, March 5, and asked Moore to accompany him to Paragould to sell some guns. Findley drove them in his car. After stopping at a liquor store, Findley informed Moore that there were no guns and they were just taking a trip to Paragould. Findley and Moore stopped at the home of Darla Clark, in Paragould, and visited with her and a friend of Ms. Clark's. Moore testified they drank several beers and left after a few hours.

Leaving Paragould, Findley began driving towards Bay, Arkansas, and informed Moore that "he had a body to get rid of," and offered Moore $500 to help him. Findley told Moore the body was David Phillips and that Findley had "set up a car deal and it went sour. . . .[T]hese two guys in Memphis were supposed to rough us up and we were supposed to split the $1,700, but he (Phillips) got killed." Moore stated Findley told him that when he and Phillips arrived in Memphis, Phillips noticed the gun Findley was carrying and asked to see it, whereupon one of the other men got the gun from Phillips, shot him, and then told Findley to "deal with it."

Findley took Moore to an abandoned farm house where he

had stored Phillips' body in a refrigerator. The two men loaded the body in the trunk of the car and eventually deposited it in the drainage ditch. They returned to Phillips' home in Truman, Arkansas, and moved his car to a parking lot in Bay so that "people would think he had left." Findley then drove Moore home, arriving at approximately 2:00 a.m. on Sunday, March 6.

Moore went with Findley the next day to get a new spare tire and trunk mat. Moore testified that the old, blood stained tire and mat were thrown out alongside a country road. Moore stated Findley never paid him the $500 as promised, and that Findley had used the $1,700 to pay bills. This testimony was corroborated by Findley's ex-wife who testified that Findley gave her money between March 2 and 4 to pay the rent and to have the phone reconnected. Mrs. Jones also testified that she had remarked to Findley about the disappearance of the spare tire and mat and that she had seen some green plastic in the trunk.

The Findleys' landlord confirmed that on March 1 the Findleys were behind on their rent and on March 2 they paid $610 in cash.

An expert with the Arkansas State Crime Lab established that the bullets recovered from David Phillips' body were fired from Findley's gun. Findley purchased the gun from a pawn shop on March 4. Mrs. Jones testified that after Findley was arrested, he asked her to dispose of the gun shells in their apartment or to have his sister do it.

Findley argues the evidence is insufficient to support the fact that a robbery occurred at the time of Phillips' death and thus there was no proof of an underlying felony to support a capital murder conviction.

Ark. Code Ann. § 5-10-101(a)(1) (1987) provides:

(a) A person commits capital murder if:
(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit rape, kidnapping, arson, vehicular piracy, robbery, burglary, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human

life . . . .

Findley contends, at most, the State's evidence suggests that Findley committed theft or theft by deception and then several days later Phillips was killed, not immediately therafter, as provided by the capital murder statute. "A person commits robbery if, with the purpose of committing a theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another." Ark. Code Ann. § 5-12-102(a) (1987).

■ There is ample evidence in the record to support the conclusion that Findley obtained money from Phillips for a phony car purchase and then, either acting alone or with others, killed Phillips in order to keep that money. As in the first appeal, we reject Findley's argument that the robbery and murder had to occur within a brief interval of time. Although the robbery scheme originated earlier in the week, it culminated when Findley's accomplice (or Findley himself) employed lethal force, either to take Phillips' money or to ensure his silence when he asked for its return. *See Hall* v. *State*, 299 Ark. 209, 772 S.W.2d 317 (1989) (theft by receiving held to be a continuing offense), and our analogy to this case in *Findley* v. *State* (I), *supra.*

Findley also argues the evidence is insufficient to prove that the murder took place in Arkansas and, therefore, the trial court was without jurisdiction.

■■ The State is not required to prove jurisdiction unless evidence is admitted that affirmatively shows that the court lacks jurisdiction. Ark. Code Ann. § 5-1-111(b) (1987). Before the State is called upon to offer any evidence on the question of jurisdiction, there must be positive evidence that the offense occurred outside the jurisdiction of the court. *Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978). Here, there was no positive evidence that the crime occurred in Memphis, as Findley contends. It was only through the *State's* witness, Jim Moore, that the murder was linked to Memphis, and the State has never contended that Moore's testimony should be accepted as the sole truth of what occurred.

■ Furthermore, it is not essential that all of the elements of the crime charged take place in Arkansas. We have said it is

generally accepted that if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed may take jurisdiction. *Glisson* v. *State*, 286 Ark. 329, 692 S.W.2d 227 (1985) (quoting *Gardner* v. *State, supra*). As we explained, evidence shows the robbery scheme initated in Arkansas, but culminated (if Findley's story, as told by Moore, is to be believed) in Memphis. The trial court was correct in refusing Findley's motion for directed verdict on the issue of jurisdiction.

Lastly, under Findley's "sufficiency" argument, he contends the State's own evidence proves, as a matter of law, his affirmative defense to the offense of capital murder as defined in Ark. Code Ann. § 5-10-101(b) (1987). This argument is meritless and will be addressed under our discussion of jury instructions.

## II. *SPEEDY TRIAL*

Findley next asserts the trial court erred in denying his motion to be released from pretrial incarceration, thereby violating speedy trial rules. We disagree.

Charges were filed against Findley on March 31, 1988, and the first trial began on September 9, 1988. On October 30, 1989, we reversed Findley's conviction and remanded for a new trial. The State retried Findley on May 9, 1990.

Findley argues he should have been released on his own recognizance before the second trial, since he had been continously incarcerated for over nine months from the time the information was filed. (Findley excludes the time from September 9, 1988, the first trial date, to October 30, 1988, the date we reversed and remanded the case.)

In denying Findley's motion, the trial court relied on Ark. R. Crim. P. 28.2 which states in pertinent part:

> (c) if the defendant is to be retried following a mistrial, an order granting a new trial, or an appeal or collateral attack, the time for trial shall commence running from the date of mistrial, order granting new trial or remand.

Pursuant to this rule, the time for speedy trial purposes began running anew on October 30, 1989, when we granted a new trial. *See also Nettles* v. *State*, 303 Ark. 8, 791 S.W.2d 702 (1990).

There was no violation of speedy trial rules since Findley was retried in May, 1989, only seven months from the date of our order.

### III. JURY INSTRUCTIONS/AFFIRMATIVE DEFENSES

During oral argument to this court, Findley's counsel conceded that Findley was not entitled to an instruction as to the affirmative defense for first degree murder under Ark. Code Ann. § 5-10-102(b), as the proof shows that Findley was armed with a deadly weapon during the time the offense was committed. Findley insists, however, that the trial court erred in not instructing the jury under section 5-10-101(b), which provides that "it is an affirmative defense to [a prosecution for capital murder], in which the defendant was not the only participant, that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid its commission."

After hearing arguments from counsel, the trial court ruled that, based on the evidence, there was no "rational basis" for giving the instructions and that the instructions would confuse, rather than assist, the jury. The trial court's use of the term "rational basis" tracks our language in *O'Rourke v. State*, 298 Ark. 144, 765 S.W.2d 916 (1989), in which we indicated there was "no rational basis" for giving the affirmative defense instruction for felony murder since there was no evidence the defendant did not kill his parents or aid in the commission of their murders.

More recently, we have said that where there is even the slightest evidence to warrant an instruction, it is error to refuse it. *Dunlap v. State*, 303 Ark. 222, 795 S.W.2d 920 (1990). Under either standard, the trial court was correct in refusing the instruction.

An examination of the record, as a whole, reveals that Findley schemed to rob Phillips, brought him to the rendezvous site, obtained the gun used in the homicide immediately prior to Phillips' death, and then made arrangements for, and participated in, the disposition of Phillips' remains. There was simply no evidence to warrant instructing the jury that Findley did not "*in any way*" solicit, command, induce, procure, counsel, or aid in

Phillips' murder.

## IV. *CONFIDENTIAL COMMUNICATIONS/SPOUSAL PRIVILEGE*

Findley next claims he should have been allowed to assert the husband-wife privilege in order to prevent his ex-wife from testifying as to certain confidential communicaitons between them around the time of the murder.

Findley presented seventeen statements to the trial court that Judy Findley Jones made at the first trial and that he argued were confidential communicaitons and should be excluded from her testimony at the second trial.[1] The trial court examined each statement, heard arguments from counsel, and ruled that the statements Findley made to his wife, and which she repeated at trial, were either for the purpose of establishing an alibi, in which case they were intended for publication, or the statements did not comprise things Findley *told* his wife, but were merely things Mrs. Jones did or observed. The trial court admitted most of the statements, and suppressed others. We find the trial court's rulings, with regard to these statements, were correct; however, one statement is worthy of comment.

Mrs. Jones testified at the first trial that following Findley's arrest, she visited him at the county jail and he told her "to dispose of [some shells intheir apartment] or call his sister and get her to do something with them." The trial court held the statement was not confidential since it was intended for disclosure to Findley's sister. We agree since the communication clearly falls outside the purview of A.R.E. Rule 504, which provides that a communication is confidential "if it is made privately by any person to his or her spouse and is *not intended for disclosure to any other person.*" (Emphasis added.)

---

[1] We note, and the trial court so held, that Findley's failure to raise the husband-wife privilege at the first trial does not now bar consideration of the issue on law of the case principles. The admission of Findley's police statements and his decision to testify at the first trial, precluded him, *as a practical matter,* from raising the issue.

## V. CROSS-EXAMINATION REGARDING REFILING OF MURDER CHARGES

For his next point of error, Findley claims the trial court erred in refusing to allow him to cross-examine Jim Moore concerning the fact that Moore was initially charged with capital murder, along with Findley, and that the charge was then nol prossed, re-filed, and eventually nol prossed again. The trial court ruled that Moore could be questioned as to whether he had ever been charged with capital murder and then later charged with hindering apprehension, but barred any questions about the State's decision to ultimately nol pross the murder charge. We find the trial court was wrong in this regard; however, Findley was not prejudiced by the trial court's restriction of his cross-examination.

 Moore testified, on cross-examination, that he had been charged with capital felony murder for the death of David Phillips and that he had eventually pled guilty to the charge of hindering apprehension for helping dispose of the body. He testified further that he was not giving testimony as the result of plea negotiations but because his testimony was the truth. This exchange was more than sufficient to call into question Moore's credibility, as his negotiations with the State could only lead to the logical conclusion that he had made a bargain with the State which led to a lesser charge and sentence, in return for his testimony. Cross-examination should be limited to material, relevant matters before the court, and harmless errors are not grounds for reversal. *Hoback v. State*, 286 Ark. 153, 689 S.W.2d 569 (1985).

## VI. CROSS-EXAMINATION REGARDING MARIJUANA

When Jim Moore was arrested for the murder of David Phillips, the police recovered marijuana from Moore's home, pursuant to a consensual search. No charges were filed, as a result of Moore's plea negotiations.

At trial, the court prevented Findley from cross-examining the investigating officer, Jerry Brogdan, concerning the seizure of marijuana from Moore's home. Findley asserts this ruling was error since the information was relevant to Moore's plea negotia-

tions with the State and the issue of Moore's credibility.

■ The trial court reasoned that information concerning the seizure of marijuana could not be elicited from Officer Brogdon as Moore had already testified, at length, on cross-examination, that marijuana was found in his home and that the State had agreed not to press charges as part of his guilty plea to the offense of hindering apprehension. The exclusion of evidence cannot be considered prejudicial if the same evidence is introduced by another witness and was before the jury for its consideration. *Hall* v. *State*, 286 Ark. 52, 689 S.W.2d 524 (1985). We uphold the trial court's ruling since Findley suffered no prejudice.

## VII. *FEE CAP*

Findley's final assertion of error is that the $1,000 attorney's fee limitation, set forth in Ark. Code Ann. § 16-92-108 (1987), is unconstitutional.

■ We recently ruled that the fee cap for appointed attorneys in criminal cases is, in fact, unconstitutional, in *Arnold* v. *Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991); however, Findley is precluded from raising the issue on law of the case principles.

The fact that the evidence was substantially different in the second trial does not prevent us, here, from deciding the issue on the law of the case doctrine since the constitutionality of Section 16-92-108 has nothing to do with evidentiary matters. Either Findley raised this issue at his first trial, and lost on appeal when we reversed and remanded the case, or Findley did not raise the issue at his first trial. The law of the case doctrine prevents consideration of arguments that were made, or could have been made, at the first trial of the case, *Willis* v. *Estate of Adams*, 304 Ark. 35, 799 S.W.2d 800 (1990), and applies to constitutional issues. *See Bedell* v. *State*, 260 Ark. 401, 541 S.W.2d 297 (1976).

Pursuant to Ark. Sup. Ct. R. 11(f), we have reviewed all other rulings adverse to Findley and find that none constitute prejudicial error.

Affirmed.