Bruce Jon KIRWAN *v.* STATE of Arkansas

CR 02-79 96 S.W.3d 724

Supreme Court of Arkansas
Opinion delivered January 30, 2003

*David L. Dunagin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant, Bruce Jon Kirwan, was convicted of attempted rape and pandering or possessing visual or print medium depicting sexually explicit conduct involving a child. The charges arose from an Internet sting operation. On appeal, Mr. Kirwan challenges the sufficiency of the evidence to support the attempted-rape conviction and the jurisdiction of the trial court to try him on the pandering charge. We find both arguments to be without merit and affirm.

In the spring of 2001, the Criminal Intelligence Unit of the North Little Rock Police Department initiated an investigation of a Yahoo Club named Arkansas Incest.[1] Officer Kara Zulpo posed both as a thirty-two-year-old woman, Michelle, and as her eleven-year-old daughter, Andrea. She was contacted by Mr. Kirwan who introduced himself as a photographer who took "interesting types" of photographs. Mr. Kirwan continued to communicate with "Michelle" and "Andrea" in the chat room and via email over several months, and the conversations became sexual in nature. Mr. Kirwan also emailed various pictures depicting himself nude, as well as pictures of children engaged in various sexual activities.

During Internet conversations with Andrea, Mr. Kirwan stated that he wanted to be her first lover; that he wanted her to keep track of her menstrual cycle so she would know when she could have sex without getting pregnant, and that she would love it if he gave her oral sex. In an email to Michelle, Mr. Kirwan discussed driving from Houston to North Little Rock and stated,

---

[1] The Yahoo "Clubs" are Internet chat rooms. A chat room allows people to communicate over the Internet with each other in real time by typing messages.

"I know Andrea wants me to lead the way and show her in a gentle way about the basics of sex."

Mr. Kirwan discussed with Michelle a photographic session in which he would take sexually explicit photographs of Andrea and also her fictional eleven-year-old friends, Melanie or Melissa. He proposed two portfolios, one for modeling and another to document Andrea's "budding womanhood, her ripening sexuality and possibly, her first sexual intercourse with a man (hopefully me! :-))."

Shortly after making contact with Michelle and again before driving from Houston, Mr. Kirwan expressed concern that he was being lured "into a child molestation trap." He acknowledged that he had already broken the law by emailing the pictures, and that he could go to jail for twenty to thirty years on charges of "rape, sexual entrapment via the Internet, child pornography, etc." Two days before driving from Houston, Mr. Kirwan emailed Andrea to make sure he had the correct address and that someone would be at the apartment. He also twice reminded Andrea to keep track of her period because "[i]t's VERY important to know when you're gonna start and stop."

On June 15, 2001, Mr. Kirwan arrived at what he thought was the apartment of Michelle and Andrea. In fact, he was met by officers from the North Little Rock Police Department and placed under arrest. Pursuant to a search warrant, officers searched Mr. Kirwan's vehicle and seized photographic equipment, including three or four cameras, backdrops, lighting equipment, and a laptop computer with zip disks.[2] Various other items of evidence were also recovered during the search: two magazines (*Hustler* and *Gallery*); a Teddy Bear; Mardi Gras mask; bug massager; Sunshine Body Oil; Trojan condoms; a box; candles; rope; and a three-piece lingerie set.

A jury found Mr. Kirwan guilty of attempted rape and pandering. He was sentenced to fifteen years in the Department of Correction for attempted rape and ten years for pandering, with the sentences to run consecutively. Mr. Kirwan raises two points

---

[2] A zip disk is a removable hard disk used to store data and programs.

on appeal. First, he contends that the trial court erred in denying his motion for a directed verdict on the count of attempted rape. Second, he argues that the trial court lacked personal jurisdiction to try him based on the pictures transmitted over the Internet via email from Texas.

### I. Sufficiency of the Evidence — Attempted Rape

Mr. Kirwan's argument on appeal is that the trial court erred in denying his motion for a directed verdict because the State failed to prove that driving from Houston, Texas, to North Little Rock, Arkansas, represented a substantial step in a course of conduct intended to culminate in the commission of rape. Specifically, he contends there was no agreement to have sex with anyone, and that the only agreement was to take pictures. According to Mr. Kirwan, the act of driving from Houston to North Little Rock is circumstantial evidence that is more probative of his intent to take pictures than to commit rape.

■ ■ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Rains v. State*, 329 Ark. 607, 953 S.W.2d 48 (1997). All evidence is considered in the light most favorable to the verdict and only evidence supporting the verdict is considered. *Id.* Evidence is sufficient if it is forceful enough to compel a reasonable mind to reach a conclusion and pass beyond suspicion and conjecture. *Nance v. State*, 323 Ark. 583, 918 S.W.2d 144 (1996). Circumstantial evidence can constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Id.* On review, this court neither weighs the evidence nor evaluates the credibility of witnesses. *Rains v. State, supra.*

■ ■ "A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person . . . [w]ho is less than fourteen (14) years of age." Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2001). Evidence of forcible compulsion is not required to sustain a conviction where the victim is less than fourteen years of age. *Cope v. State*, 292 Ark. 391, 730 S.W.2d 242 (1987). "A person attempts to commit a crime if he . . . [p]urposely engages in conduct that constitutes a substantial

step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be." Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997). However, "[c]onduct is not a substantial step . . . unless it is strongly corroborative of the person's criminal purpose." Ark. Code Ann. § 5-3-201(c). In the instant case, the State had the burden of proving that Mr. Kirwan intended to rape Andrea and took a substantial step toward the commission of the crime that was strongly corroborative of his criminal purpose. *See Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002).

As an initial matter, we consider whether a person can attempt to rape a fictional victim. In other words, could Mr. Kirwan have pleaded the defense of impossibility? According to the Original Commentary to section 5-3-201, the attempt statute "abolish[es] the defense of impossibility":

> Both §§ 5-3-501(a)(1) and (2) require that the defendant be judged on the basis of what he believes the attendant circumstances to be, not what the attendant circumstances actually are. Thus, he is precluded from arguing that in light of the actual facts his conduct could not possibly result in the commission of the ultimate offense. . . . [For example] A, mistakenly believing B to be a juror, offers B a bribe. A commits the offense of attempted bribery under § 5-3-201(1)(2) irrespective of his mistaken notion as to the attendant circumstances, viz., the status of B.

Original Commentary to Ark. Code Ann. § 5-3-201 (Repl. 1995). The commentary also explains that the attempt statute "provides a firm legal basis for the intervention of the agencies of law enforcement to prevent [the offense's] commission" and addresses the problem that "[c]onduct designed to cause or culminate in the commission of a crime [indicates] that the actor is disposed towards such activity, not alone on this occasion but on others." *Id.* Therefore, the fact that Andrea is merely a fictional character created by the North Little Rock Police Department has no relevance in this challenge to the sufficiency of the evidence. If there is substantial evidence that Mr. Kirwan intended to rape an eleven-year-old girl and took a substantial step toward the commission of that crime, the verdict should be affirmed even though

the attendant circumstances were not as he believed them to be. Ark. Code Ann. § 5-3-201(a)(2).[3]

## A. Intent

■ Mr. Kirwan concedes in his brief that there was sufficient evidence of his intent to have sex with a minor. On numerous occasions, he told Andrea and Michelle that he wanted to engage in sexual activities with Andrea. Nonetheless, he asserts that there was no agreement to have sex. This argument is without merit. Consent is not an issue where the victim is less than fourteen because an under-aged victim cannot consent to sexual intercourse. *M.M. v. State*, 350 Ark. 328, 88 S.W.3d 406 (2002).

## B. Substantial Step

■ ■ In addressing this point on appeal, Mr. Kirwan primarily contends that there was insufficient evidence that he took a substantial step toward the commission of the offense of rape. The Original Commentary to Ark. Code Ann. § 5-3-201 indicates that the following conduct "might reasonably be held by a trier of fact to be substantial steps: . . . enticing or seeking to entice the contemplated victim of the offense to go to the place contemplated for its commission; . . . [or] soliciting an innocent agent to engage in conduct constituting an element of the offense." The commentary also notes that the enactment of the statute represented a change in Arkansas law "by allowing imposition of criminal liability for conduct further removed from consummation of an offense. But it remains clear that under the Code not every act done in conjunction with the intent to commit a crime constitutes an attempt to commit the crime." *Id.* (internal citation omitted).

---

[3] At least two other jurisdictions have also concluded in cases involving similar sting operations that a defendant can attempt to commit a crime against a fictional victim. *People v. Patterson*, 314 Ill. App.3d 962, 734 N.E.2d 462 (2000); *State v. Fowler*, 3 S.W.3d 910 (Tenn. 1999).

At issue in this case is Mr. Kirwan's claim that, even if he did want to have sex with eleven-year-old Andrea, the mere act of driving from Houston to North Little Rock to take pictures did not constitute a substantial step toward the commission of the offense and was not strongly corroborative of his criminal intent to commit rape. Driving to Arkansas was, however, merely a final step in a course of conduct intended to culminate in the commission of rape. The following Internet conversations clearly indicate that Mr. Kirwan sought to entice Andrea to meet him at her home in North Little Rock, the contemplated place for the culmination of the seduction:

*Email to Michelle, May 1, 2001.* — Mr. Kirwan begins by seeking assurance from Michelle that he is not being "lured into some type of trap, a 'sting operation' run by law enforcement officials [because] what we are discussing verges on child pornography or even more." Next, he wanted to know if she was trying to prostitute her child for the price of a photo session. "Concerning the price, elaborate a little on what you mean by 'working out something on Andrea's curiosity' Like, I waive my usual fees in exchange for having sex with Andrea? Is that what you have in mind? Let's put our cards on the table." He then expresses his desire to do more than take photographs: "Yes, I would enjoy having sex with Andrea — and you, too, Michelle. For the three of us to be intimately sexual, together, would be very cozy, sharing and satisfying for all of us. Don't you think?" Finally he describes one of the photos he proposes to take of Andrea as "possibly, her first sexual encounter with a man (hopefully me! :-))" Attached to the email are three nude photos of Mr. Kirwan. To this email, Michelle replies that it is not a sting, and she is not attempting to prostitute her child. Michelle states that Andrea has been online hoping to talk with him.

*Online chat room session with Andrea, May 2, 2001.* — After obtaining the mother's initial approval to speak with Andrea, he lets Andrea know that she can confide in him. "[Y]ou can tell me whatever you want. We can talk about anything." Next, he impresses her. "Have to leave soon. I have to photograph Dr.

Debakey, the famous heart surgeon . . . ." Then, he makes sure he has permission. "Would [your mother] mind me chatting with you? . . . I don't want to upset her, ya know?" With the preliminaries out of the way, Mr. Kirwan escalates the conversation to directly address his desires to have sex with this eleven-year-old girl.

- [W]ant me to take some nice photos of you, nude? . . . your mom will be right there . . . we'll start with your clothes on.
- [E]ver gone to a Naturist camp? Or a Nudist Resort?
- Have you started wearing a bra yet? . . . I want to take some nice, sexy, erotic photographs of you, Andrea. Something that will give boys and men a hardon when they see them!
- Have you played around with boys, yet? . . . Tell me about it. . . . Did he touch your boobies? Or your pussy? . . . I want to play with you, too, Andrea. . . . Kiss you and touch you. Squeeze your buns and watch you blush!
- It's nice to be with a girl your age, and help her deal with sex, questions about that, and be intimate with her, introduce her to sex, like that. And for an older woman like your mom, she will have a different viewpoint. She'll like sex in a different way, maybe with more than one partner, maybe with me and you together, I don't know.
- Have you ever seen [your mother] having sex?

*Email to Michelle, May 2, 2001.* — Mr. Kirwan discusses the details and costs of a photo shoot and sends a model release form. He also casually mentions that he chatted with Andrea. A second email sent the same day attaches a picture of his erect penis.

*Chat with Michelle, May 3, 2001.* — "You won't get upset if Andrea tells me confidential stuff about her, would you? . . . [I]f she wants [an] adult male friend to confide in, would you mind?"

*Chat with Andrea, May 3, 2001.* —

- When you look at sexy photos . . ., do you get 'buzzy', like butterflies in your belly?
- I'll help you feel good, Andrea, Very good. So good, you'll be gasping for breath. . . . I want to be your first lover. . . . You'll love it. And your mom will appreciate it, too.

- Do this for me: Keep good track of your period. My ex wife used to keep track on a calendar. That way she always knew when it was cool for us to fuck. She would let me know when she was "safe" for sex.
- Oh honey, you'll love it if I give you some nice oral sex.

*Chat session with Andrea, May 9, 2001.* — "You should keep track of your cycle, though. Because I want to know exactly where you are in your cycle when I visit . . . don't want to risk pregnancy."

*Email to Michelle, May 29, 2001.* — "I know Andrea wants me to lead the way and show her in a gentle way about the basics of sex. No pressure, no bullshit. No rush rush. Just a safe, sensitive, caring lover. Maturity. Experience. Patience. Understanding. This is what she needs."

*Email to Andrea, June 13, 2001 (two days before trip).* — "Angel, when are you gonna start your next period? When did your last one stop? VERY important I know. Bruce."

*Second email to Andrea, June 13, 2001.* — "So, when do you think your next period will begin? Remember keep good track. It's VERY important to know when you're gonna start and stop."

Finally, on June 15, 2001, Mr. Kirwan left Houston and drove to North Little Rock to meet with Andrea and Michelle. Upon arriving in North Little Rock, Mr. Kirwan walked up to the apartment door expecting to find a thirty-two-year-old mother with her eleven-year-old daughter. Instead, he was arrested.

The issue facing this court is whether the above conduct constitutes a substantial step intended to culminate in the commission of the offense of rape. The evidence in this case indicates that Mr. Kirwan was a sexual predator, stalking his victims in the fertile hunting grounds of the Internet. Having found a likely victim in Yahoo's Arkansas Incest chat room, he set out on a deliberate course of conduct designed to seduce an eleven-year-old girl and persuade her to have sex with him. He presented himself to Andrea as a father-figure, a confidant, and a trustworthy adult

capable of guiding her into sexual awakening. Furthermore, Mr. Kirwan sought to obtain the mother's permission and, preferably, her complicity. In his communications with Michelle, he presented himself both as a lover and as a father to Andrea who could assist Michelle in educating her daughter about sexuality. He moved one step at a time in order to find out how far Michelle was willing to go. First, he asked if Michelle was prostituting Andrea by offering to trade the cost of pictures for sex with her daughter. When told that was not the case, Mr. Kirwan asked Michelle whether she would mind if he chatted with Andrea. Then, he asked Michelle if he could discuss sex with Andrea. Next, he stated he wanted to have sex with Andrea and that Andrea wanted to have sex with him. He concluded by telling Michelle she would be doing her daughter a favor by allowing him to be her daughter's first lover. Ultimately, Mr. Kirwan obtained the mother's assurance that she would not object to his sexual advances toward Andrea. In fact, he convinced Michelle to deliver Andrea to him for the purpose of taking nude pictures of the minor, including a photograph of "her first sexual encounter with a man (hopefully me! :-))."

The Illinois Court of Appeals addressed a similar situation involving a fictional minor victim and concluded that the defendant's conduct constituted a substantial step toward the commission of the offense. *People v. Patterson*, 314 Ill. App. 3d 962, 971, 734 N.E.2d 462, 470 (2000). In that case, the defendant had offered to perform oral sex on the minor victim. He had arranged to meet the victim at a specific place and time, and he had told the victim what clothes he would wear and what car he would drive. The defendant also traveled to the rendezvous at the appointed time. *Id.* Likewise, the Tennessee Supreme Court came to the same conclusion in a sting operation involving a young male:

> The evidence in this case taken in a light most favorable to the State overwhelmingly supports the jury's finding that the defendant's conduct constituted a substantial step toward commission of statutory rape. . . . We would create a dangerous precedent by requiring that the defendant take delivery of the boy or actually begin some act that would approach sexual penetration.

> Once a pedophile purchases a child and takes the child into his possession, some damage has likely occurred. Moreover, the child is placed in a position of imminent danger from which the child may be powerless to protect himself or herself.

*State v. Fowler*, 3 S.W.3d 910, 912-13 (Tenn. 1999).

The situation here is analogous. This court declines to require the actual delivery of the young girl into the hands of the defendant, an action that would have been both dangerous to the youth and, in our opinion, unnecessary. Accordingly, we hold that Mr. Kirwan's conduct in seducing both Andrea and her mother, and his trek from Houston to the rendezvous in North Little Rock at the appointed time, were strongly corroborative of his expressed intent to engage in sexual intercourse or deviate sexual activity with an eleven-year-old girl, and constituted a substantial step toward the commission of the offense. The trial court properly denied the defendant's motion for a directed verdict on the charge of attempted rape.

### II. Personal Jurisdiction — Emailing Pornographic Pictures

For his second point on appeal, Mr. Kirwan contends that the trial court was without personal jurisdiction to try him on the pandering charge because he was in Houston when he possessed and distributed the objectionable photographs. Mr. Kirwan does not otherwise challenge the sufficiency of the evidence to support his conviction for pandering or possessing visual or print medium depicting sexually explicit conduct involving a child under Ark. Code Ann. § 5-27-304 (Repl. 1997), which provides in relevant part:

> (a) No person, with knowledge of the character of the visual or print medium involved, shall do any of the following:
>
> (1) Knowingly advertise for sale or distribution, sell, *distribute*, transport, *ship*, exhibit, display, or receive for the purpose of sale or distribution any visual or print medium depicting a child participating or engaging in sexually explicit conduct;
>
> (2) Knowingly solicit, receive, purchase, *exchange*, possess, view, *distribute*, or control any visual or print medium

depicting a child participating or engaging in sexually explicit conduct.

Ark. Code Ann. § 5-27-304(a) (emphasis added).

 ██ Territorial jurisdiction over a criminal defendant is controlled by statute: "A person may be convicted under the laws of this state of an offense committed by his own or another's conduct for which he is legally accountable if . . . [e]ither the conduct or a result that is an element of the offense occurs within this state . . . ." Ark. Code Ann. § 5-1-104(a)(1) (Repl. 1997). We have stated that "when reviewing the evidence on a jurisdictional question, [we] need only determine whether there is substantial evidence to support the finding of jurisdiction." *Dunham v. State*, 315 Ark. 580, 581, 868 S.W.2d 496, 497 (1994).

 Mr. Kirwan was convicted under a statute that makes it unlawful to "distribute, . . . ship, . . . [or] exchang[e]" any visual or print medium depicting a child participating or engaging in sexually explicit conduct. Ark. Code Ann. 5-27-304(a). He does not deny that he emailed pictures of children participating in sexually explicit conduct to addresses located in Arkansas. To distribute, ship, or exchange, there must be at least one sender and one recipient. Here, the pictures were sent from Houston and were received in North Little Rock. Thus, Mr. Kirwan's conduct, as well as the result of his conduct, occurred within Arkansas. The trial court properly denied Mr. Kirwan's jurisdictional challenge to the sufficiency of the evidence on the pandering charge.

Affirmed.