Cite as 2025 Ark. 62

# SUPREME COURT OF ARKANSAS
No. CR-24-776

|  |  |
|---|---|
|  | **Opinion Delivered:** May 8, 2025 |
| AMBER DAWN WATERMAN<br>APPELLANT |  |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-22-2355] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE ROBIN F. GREEN, JUDGE |
|  | AFFIRMED. |

**KAREN R. BAKER, Chief Justice**

Appellant Amber Dawn Waterman brings this interlocutory appeal of the Benton County Circuit Court's denial of her motion to dismiss her prosecution based on double jeopardy. Waterman presents two arguments on appeal: (1) her prosecution is barred by the double jeopardy provisions of Ark. Code Ann. § 5-1-114 (Repl. 2024); and (2) article 2, section 8 of the Arkansas Constitution prohibits her prosecution. We affirm.

On November 10, 2022, Waterman was charged in Benton County with two counts of premeditated and deliberated capital murder stemming from the deaths of Ashley Bush and her unborn child, Valkyrie Grace Willis.[1] On July 30, 2024, Waterman pleaded guilty in the United States District Court for the Western District of Missouri to one count of

---

[1]Waterman was also charged with kidnapping in Benton County but that charge was dismissed and is not at issue on appeal.

kidnapping that resulted in death pursuant to 18 U.S.C. § 1201(a)(1) and one count of kidnapping that resulted in the death of an unborn child in violation of 18 U.S.C. § 1841. Waterman was sentenced to two life sentences. According to the federal statement of facts and the affidavit of probable cause for bond filed in the circuit court, in October 2022, Waterman, using a false name, contacted Bush via Facebook and pretended to help Bush find employment. Bush was thirty-one weeks pregnant. On October 31, 2022, the two met at a convenience store in Maysville, Arkansas, and Bush got into a truck driven by Waterman. Waterman then kidnapped Bush, holding her in her truck from Maysville to Waterman's residence in Pineville, Missouri. Later that day, first responders responded to an emergency call regarding a baby who was not breathing. Waterman stated that she had given birth to the baby in the truck while on the way to the hospital. CPR was performed, but the baby could not be resuscitated. The baby's body was transported to a funeral home. On November 2, 2022, detectives confirmed with the funeral home that a memorial service was scheduled for an infant girl named "Dakota Waterman." After the service, the Benton County Coroner took possession of the infant's body for transport to the Arkansas State Crime Laboratory for an autopsy. The baby was later confirmed to be Bush's child, Valkyrie. Valkyrie's autopsy revealed that her cause of death was perinatal demise due to inflicted maternal injuries. Bush's autopsy revealed that she died as a result of penetrating trauma of the torso, and the manner of death was classified as a homicide.

On August 1, 2024, Waterman entered pleas of not guilty and former jeopardy in the Benton County Circuit Court. On the same day, Waterman filed a motion to dismiss on the statutory double-jeopardy prohibitions of Ark. Code Ann. § 5-1-114. On September

22, 2024, Waterman filed a supplement to her motion to dismiss asserting that her prosecution is prohibited under article 2, section 8 of the Arkansas Constitution.

On October 28, 2024, the circuit court held a hearing and found that the two counts of capital murder were not barred. On October 29, the circuit court entered its written order denying the motion to dismiss and incorporated its oral rulings from the hearing. On the same day, Waterman filed her notice of interlocutory appeal.

I. *Ark. Code Ann. § 5-1-114*

For her first argument on appeal, Waterman argues that her prosecution is barred by the double-jeopardy provisions of Ark. Code Ann. § 5-1-114.

We review a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo. *Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). We have explained that "when the analysis presents itself as a mixed question of law and fact, the factual determinations made by the trial court are given due deference and are not reversed unless clearly erroneous." *Id.* at 320, 235 S.W.3d at 483. However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.* A double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *Zawodniak v. State*, 339 Ark. 66, 3 S.W.3d 292 (1999).

Section 5-1-114 addresses the former prosecution in other jurisdictions as an affirmative defense to subsequent prosecution and provides in pertinent part:

> When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States or another state or territory of the United States, a

3

prosecution in any such other jurisdiction is an affirmative defense to a subsequent prosecution in this state under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as set out in § 5-1-112, *and the subsequent prosecution is based on the same conduct* unless:

(A) The offense of which the defendant was formerly convicted or acquitted and the offense for which he or she is subsequently prosecuted each requires *proof of a fact not required by the other offense* and *the law defining each offense is intended to prevent a substantially different harm or evil*[.]

(Emphasis added.)

We now turn to a review of Waterman's federal convictions and state charges. In federal court, Waterman pleaded guilty to 18 U.S.C. § 1201(a) as to Bush; and 18 U.S.C. § 1841 as to the unborn child, Valkyrie.

Section 1201 provides:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

. . .

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

Section 1841 provides:

(a)(1) Whoever engages in conduct that violates any of the provisions of law listed in subsection (b)[2] and thereby causes the death of, or bodily injury (as defined in section 1365) to, a child, who is in utero at the time the conduct takes place, is guilty of a separate offense under this section.

---

[2]18 U.S.C. § 1201 is one of the provisions listed.

4

(2)(A) Except as otherwise provided in this paragraph, the punishment for that separate offense is the same as the punishment provided under Federal law for that conduct had that injury or death occurred to the unborn child's mother.

(B) An offense under this section does not require proof that—

(i) the person engaging in the conduct had knowledge or should have had knowledge that the victim of the underlying offense was pregnant; or
(ii) the defendant intended to cause the death of, or bodily injury to, the unborn child.

(C) If the person engaging in the conduct thereby intentionally kills or attempts to kill the unborn child, that person shall instead of being punished under subparagraph (A), be punished as provided under sections 1111, 1112, and 1113 of this title for intentionally killing or attempting to kill a human being.

(D) Notwithstanding any other provision of law, the death penalty shall not be imposed for an offense under this section.

In Arkansas, Waterman was charged with two counts of capital murder pursuant to Ark. Code Ann. § 5-10-101(a)(4), which provides that a person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person[.]" Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2021).

The first portion of the section 5-1-114(1)(A) exception is that "the offense of which the defendant was formerly convicted or acquitted and the offense for which he or she is subsequently prosecuted each requires proof of a fact not required by the other offense." The Arkansas capital-murder charges clearly require proof that Waterman had the premeditated and deliberated purpose to cause the death of another person, however, premeditated and deliberated purpose is not required by the federal statutes. Likewise, the federal convictions required proof of facts not required under the capital-murder statute in

5

Arkansas. Specifically, kidnapping, which was required for both federal convictions, requires proof of an unlawful seizure, confinement, abduction, or holding of a person. Additionally, kidnapping requires that the person be willfully transported in interstate commerce. The Arkansas capital-murder statute requires no such unlawful holding or transport via interstate commerce. Because both the federal and state statutes require proof of facts not required by the other, we hold that the first portion of the section 5-1-114(1)(A) exception is satisfied.

The second portion of the exception is that "the law defining each offense is intended to prevent a substantially different harm or evil[.]" Ark. Code Ann. § 5-1-114(1)(A). Waterman argues that the harms at issue in the federal and state charges—the deaths of Bush and Valkyrie after the kidnapping of Bush—are identical. Thus, she contends, the issue is whether the evils that the statutes prohibit are "substantially different." Waterman contends that the evils sought to be prevented are not substantially different.

To support her position, Waterman relies on *Bateman v. State*, 265 Ark. 307, 578 S.W.2d 216 (1979), and argues that it is the most apropos case from this court. In *Bateman*, Bateman was convicted in federal court for transporting stolen firearms from Arkansas to Tennessee. Subsequently, he was charged and convicted in state court with theft by receiving the same firearms in Arkansas. In discussing Ark. Stat. Ann. § 41-108, which is now codified at Ark. Code Ann. § 5-1-114, we explained that neither portion of the exception exists. With regard to the prevention of a different evil, we explained that both the federal and state statutes are aimed at the same evil—the traffic in stolen property. Therefore, the intent of the two statutes was not substantially different as far as the evil to be prevented was concerned. *Id.* at 309, 578 S.W.2d at 217. We reversed, holding that

6

double jeopardy barred the state prosecution because the state law did not require proof of a new fact.

The State responds that Waterman's reliance on *Bateman* is unpersuasive. We agree. Unlike the statutes in *Bateman*, the federal and state statutes at issue here are intended to prevent substantially different harms or evils. Section 1201(a)(1) is intended to prevent the unlawful seizure, confinement, abduction, or holding of a person and the willful transport via interstate commerce of the person. Additionally, § 1841, which incorporates § 1201 into its scope, is intended to prevent the death of, or bodily injury to, a child who is in utero at the time of the kidnapping. No intent to cause death or injury is required by § 1201(a)(1) or § 1841. In contrast, Arkansas's capital-murder statute is intended to prevent a person from purposely causing the death of another person. For this reason, we hold that the federal and state statutes at issue are intended to prevent substantially different harms or evils, and therefore, the second portion of the section 5-1-114(1)(A) exception is satisfied. Accordingly, under Ark. Code Ann. § 5-1-114(1)(A), Waterman's federal convictions do not prevent her prosecution in Arkansas.

II. *Article 2, § 8 of the Arkansas Constitution*

For her final argument on appeal, Waterman argues that article 2, section 8 of the Arkansas Constitution prohibits her state prosecution. Waterman requests that the dual sovereignty doctrine be invalidated as a matter of state constitutional law. This court reviews a circuit court's interpretation of a constitutional provision de novo. *City of Fayetteville v. Washington Cty.*, 369 Ark. 455, 255 S.W.3d 844 (2007).

Article 2, section 8 of the Arkansas Constitution provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty[.]" Waterman points out that this language is essentially the same as in the Fifth Amendment of the United States Constitution. Waterman urges us to interpret the state constitutional provision more broadly than the federal provision. Specifically, she asks that we adopt, as a matter of state constitutional law, the dissenting opinions authored by Justices Gorsuch and Ginsburg in *Gamble v. United States*, 587 U.S. 678, 727, 737 (2019). However, we decline Waterman's invitation and hold that the Arkansas Constitution does not prohibit Waterman's prosecution under these facts.

Affirmed.

*Katherine S. Streett*, Ark. Public Defender Comm'n; and *Jeff Rosenzweig*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.