Cite as 2026 Ark. App. 299

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–25–547

| | |
|---|---|
| EMILY GRACE BRINLEY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** May 13, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-23-2359]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

In November 2023, Emily Grace Brinley and her husband Benjamin Coney made depraved arrangements through social media, then phone, to sexually abuse a nine-year-old girl in Bentonville with her mother's consent. There was no girl; the "mother" worked for law enforcement. When Brinley and Coney arrived with incriminating sexual paraphernalia, police arrested them. Brinley pleaded guilty to federal charges of attempted enticement of a minor to engage in sexual activity and aiding and abetting under 18 U.S.C. §§ 2 & 2422(b). She brings this interlocutory appeal from the Benton County Circuit Court's denial of her pretrial motion to dismiss her prosecution for conspiracy to commit rape, Ark. Code Ann. §§ 5-3-401 (Repl. 2013) & 5-14-103(a)(3)(A) (Supp. 2023), under the statutory double-jeopardy defense in Ark. Code Ann. § 5-1-114(1) (Repl. 2013).[1]

---

[1]The circuit court dismissed another count, internet stalking of a child under Ark. Code Ann. § 5-27-306 (Supp. 2023), which the State conceded was barred.

We can hear an interlocutory appeal because double jeopardy guarantees the right not to be tried twice (not just convicted twice) for the same offense. *Waterman v. State*, 2025 Ark. 62. Our review is de novo. *Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). When the analysis presents as a mixed question of law and fact, we give the circuit court's factual determinations some deference and do not reverse them unless they are clearly erroneous. *Id.* at 320, 235 S.W.3d at 483. But we review de novo the ultimate decision that the protection against double jeopardy was not violated. *Waterman*, 2025 Ark. 62.

And here, we affirm.

★ ★ ★

Arkansas, like many states, has enacted stronger statutory protections against successive prosecutions than the federal or state constitution provides. Under the "dual sovereignty" doctrine, a state prosecution following a federal conviction based on the same conduct would not violate double jeopardy under the Fifth Amendment to the U.S. Constitution even if the offense elements were identical.[2] The double-jeopardy provision in article 2, section 8 of the Arkansas Constitution has about the same breadth and would be no barrier either. *Waterman, supra.*

But section 114, whose relevant provisions are identical to Model Penal Code § 1.10, creates an affirmative defense to the new prosecution unless it fits an included exception. As relevant to this appeal, section 114 provides:

---

[2]The substantive elements of the federal and state offenses can be truly identical. Under the Assimilative Crimes Act, for example, conduct that is prohibited in the jurisdiction surrounding a federal enclave, but not by existing federal law, is a federal crime with the same elements in the enclave. 18 U.S.C. § 13.

2

When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States . . . , a prosecution . . . is an affirmative defense to a subsequent prosecution in this state under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as set out in § 5-1-112, and the subsequent prosecution is based on the same conduct unless:

(A) The offense of which the defendant was formerly convicted or acquitted and the offense for which he or she is subsequently prosecuted each requires proof of a fact not required by the other offense and the law defining each offense is intended to prevent a substantially different harm or evil.

Ark. Code Ann. § 5-1-114. An identical defense and exception apply under section 5-1-113 (Repl. 2013) when the former prosecution was in one of our state courts.

To reach the issues the parties argue, we have had to resolve some preliminary points the parties do not address. For example, a premise for applying sections 113 and 114 is that the former prosecution and new prosecution are for the "same conduct." The State does not dispute that these prosecutions are. Though we are not bound by that assumption, *State v. McMullen*, 302 Ark. 252, 789 S.W.2d 715 (1990); *Rice v. State*, 2025 Ark. App. 364, 715 S.W.3d 537, we see no reason to disturb it.

Several statutes address prosecutions and offenses based on the "same conduct." Ark. Code Ann. §§ 5-1-109 (Supp. 2023), -110 (Repl. 2013), -113 & -114. The official commentary to the Criminal Code assumes the analysis is, at some scale, what the defendant (or others whose conduct is imputed to her) has actually done:

The substantive scope of the section will turn in part on the meaning of "same conduct," a term used here as well as in [Ark. Code Ann. §§ 5-1-109, -113 & -114]. The term is intended to connote the same criminal transaction. It is broader than the same criminal act but not so broad as to encompass, in all cases, series of criminal acts pursuant to a single scheme or

3

plan. If X comes upon A, B, and C and robs them one at a time, the robberies arise from the "same conduct" despite the fact that X engages in separate acts with respect to A, B, and C. However, "same conduct" does not have application to a situation where X, pursuant to a single scheme, robs A on Monday, B on Tuesday, and C on Wednesday. It is impossible to draft a precise definition of "same conduct" that will work in all cases. The definitive limits of the term must, of necessity, be resolved on a case by case basis.

Original Commentary to Ark. Code Ann. § 5-1-110 (Repl. 1995).

Consistent with that understanding, in *Waterman* our supreme court recited events gleaned from the defendant's federal plea agreement and an affidavit of probable cause in circuit court. 2025 Ark. 62, at 2. It assumed the prosecutions involved the "same conduct" (so section 114 presumptively applied) and addressed the exception in section 114(1)(A). Here, Brinley introduced her federal judgment of conviction and her written plea agreement, which includes a detailed factual account that tracks the probable-cause affidavit filed in circuit court.

The charges in both cases involve the same conversations between the same three people—Brinley, Coney, and the "mother"—an undercover officer. Brinley and Coney both expressed intent to personally engage in penetrative sexual acts with her supposed nine-year-old daughter. The "mother" agreed to facilitate this. In circuit court, she declared in an affidavit that after Brinley and Coney asked for a video call with her and the supposed daughter, she "conducted a second quick phone call with a second [undercover officer] portraying her daughter, saying hi to the couple." Brinley's federal plea agreement omits that fact, but includes this stipulation, which seems to reference it:

f. The Defendant, Emily Grace BRINLEY, while being aided and abetted by Coney, stipulates and agrees that on or between November 19 and November 27, 2023, in the Western District of Arkansas, Fayetteville Division, she used a cellular phone connected to the Internet to persuade,

4

induce and entice an individual whom she believed had not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense, namely Arkansas Code Annotated Section 5-14-125, Sexual Assault in the Second Degree.

Brinley was federally convicted of aiding and abetting an *attempt* to commit enticement or coercion of a minor under 18 U.S.C. §§ 2 & 2422(b). The "attempt" part is easy to explain: there was no minor. But the federal court materials leave who aided and abetted whom vague.[3] And the criminal information is vague about who (Coney, the "mother," the "daughter," or some combination) Brinley is alleged to have conspired with:

> On or between November 19 and November 27, 2023, in Benton County, Arkansas, Defendant, with the purpose of facilitating sexual intercourse or deviate sexual activity [with] someone believed to be less than fourteen years old, agreed with another person to engage in that conduct, and the Defendant did overt acts in furtherance of that agreement.

Whatever level of generality is appropriate for the "same conduct" analysis, then, on this record, the conclusion that the prosecutions are for the "same conduct" is unavoidable. The section 114 defense presumptively applied.

To avoid it, the new prosecution had to meet two requirements. First, the currently and formerly charged offenses "each require[] proof of a fact not required by the other offense." Ark. Code Ann. § 5-1-114(1)(A). Second, the new prosecution must be for an offense that is "intended to prevent a substantially different harm or evil." *Id.* The circuit court ruled that the charged offenses have different elements and target different events.

---

[3]In the plea agreement, the United States "agrees that no other *federal charges*, which stem from the activities described in the Indictment, will be brought against the Defendant in the Western District of Arkansas." (Emphasis added.) We imagine the government might have chosen second-degree sexual assault as the stipulated object of that enticement charge, when the stipulated facts established intent to commit rape, with a later state prosecution in mind.

Brinley argues it erred with respect to both the "new fact" and "different harm" requirements and emphasizes that the evils the statutes prevent must not just be different, but "substantially" different.

That brings us to another preliminary question. Both prosecutions here are for an offense that requires proof that Brinley sought to bring about the commission of another offense. In the section 114 analysis of what elements must be proved and how similar or different the evils they address are, what do we compare?

(1) The root offenses alone (enticement of a minor under 18 U.S.C. § 2422 and conspiracy under Ark. Code Ann. § 5-3-401);

(2) the intended offenses that *could* satisfy their elements ("sexual activity for which any person can be charged with a criminal offense" under section 2422(b) and "any criminal offense" under section 5-3-401);

(3) the specific intended offenses that were proved or alleged (second-degree sexual assault under Ark. Code Ann. § 5-14-125 and rape under Ark. Code Ann. § 5-14-103(a)(3)(A)); or

(4) combinations from groups (1) and (2) or groups (1) and (3)?

Though a few other states have adopted a double-jeopardy statute modeled on Model Penal Code § 1.10,[4] we could find little authority anywhere on that point. From a review of decisions by this court and our supreme court—and those from other jurisdictions—we conclude we're overthinking it. Neither the drafters of section 1.10 nor any court that has applied it has succeeded in explaining how to separate the "same conduct," "new fact," and "different harm" provisions and make them require meaningfully different things. (For that

---

[4]The others include Delaware, Del. Code Ann., tit. 11, § 209; Hawaii, Hawaii Rev. Stat. § 701-112; New Jersey, N.J. Stat. Ann. § 2C:1-11; and Pennsylvania, 18 Pa. Cons. Stat. Ann. § 111.

6

matter, neither has Brinley.)  The tendency has been to conclude from any new element in the offense of the new prosecution that it is intended to prevent a substantially different harm: the old harm when that element is present.  And if the new element affects the actus reus, it means the second prosecution is not for the "same conduct" in the first place.

Here, we conclude that Brinley's conspiracy prosecution meets the exception in section 114(1)(A) even if we limit our consideration to the elements of the root offenses. And following our supreme court's lead in *Winkle, supra*, we will discuss the differences somewhat holistically.  Though dual sovereignty has prevented any direct precedent about how double-jeopardy principles would apply on these facts, double-jeopardy decisions in other settings are some help.  They show, for example, that an adjudication of liability for an offense incorporated in a different offense *can* have double-jeopardy consequences.[5]

In *United States v. Dixon*, the Supreme Court of the United States held that a contempt conviction for violating an order not to commit a criminal offense barred a later prosecution for the offense itself:

> [T]he "crime" of violating a condition of release cannot be abstracted from the "element" of the violated condition.  The [conditional release order] incorporated the entire governing criminal code in the same manner as the [*Harris v. Oklahoma*, 433 U.S. 682 (1977) (per curiam)] felony-murder statute incorporated the several enumerated felonies.  Here, as in *Harris*, the underlying substantive criminal offense is "a species of lesser-included offense."

---

[5]By statute, this can be true even when the former prosecution was in federal court. Under Ark. Code Ann. § 5-1-114(2), a judgment acquitting the defendant is an affirmative defense to a prosecution if it "required a determination inconsistent with a fact that must be established for the conviction of the offense for which the defendant is subsequently prosecuted."  The same is true for adjudications in our state courts.  Ark. Code Ann. § 5-1-113(2).

7

509 U.S. 688, 698 (1993). Our supreme court has followed *Dixon* on this point. *Thompson v. State*, 2016 Ark. 383, at 10 n.2, 503 S.W.3d 62, 68 n.2.

Like the contempt order in *Dixon*, the enticement statute incorporates part of the "entire governing criminal code." The conspiracy statute incorporates it all. *See* Ark. Code Ann. § 5-3-401 ("any criminal offense"). To violate either statute, you must have some other offense in mind. But unlike *Dixon*, neither statute requires proof that Brinley (or the enticed minor) *actually committed* that offense. And there would be no inconsistency in a verdict convicting Brinley of having enticed or conspired with others to commit an offense but acquitting her of the offense itself.

Our supreme court addressed this characteristic of a different Mann Act prosecution in *Winkle*, which decided similar issues under section 114. The defendant was acquitted in federal court of transporting a minor across state lines with intent to commit rape, in alleged violation of 18 U.S.C. § 2423(a). He was then charged in state court with raping the same minor. The rape offense was the same in both prosecutions. Though the offense elements in the federal and state offenses thus overlapped in the *Dixon* sense—the federal one incorporated the state offense's elements—our supreme court held that the state prosecution met both the "new fact" and "different harm" requirements of section 5-1-114(1)(A). The court quoted federal authority holding that "[w]hat Congress has outlawed by the Mann Act . . . is the use of interstate commerce as a calculated means for effectuating sexual immorality." *Id.* at 323, 235 S.W.3d at 485–86 (quoting *Reamer v. United States*, 318 F.2d 43, 47 (8th Cir. 1963)) (emphasis omitted). Further, the court observed that the rape offense

8

criminalized the *defendant's* acts of sexual intercourse or deviate sexual activity with minor, while the federal statute was not so limited:

> Another purpose of the federal act is evident in the statute's language criminalizing the defendant's "intent that the individual [under the age of 18] engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." The act was thus not necessarily aimed at preventing the defendant from engaging in a sexual activity with the minor; *the act was intended to protect the minor from being taken across state lines and made to engage in sexual activity with anyone, whether through prostituting the minor or by other means.*

*Id.* at 324, 235 S.W.3d at 486 (emphasis added).

The same analysis controls here. The same intent language from section 2423(a)—intent that the minor "engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense"—appears in the neighboring enticement statute under which Brinley was convicted. Section 2423(a) prohibits transporting a minor, while section 2422(b) prohibits "persuad[ing], induc[ing], entic[ing], or coerc[ing]" one. But neither statute is limited to performing those acts with intent for the minor to engage in sexual activity *with the defendant.*

In fact, federal courts have interpreted unlawful "sexual activity" under section 2422(b) to include conduct by a minor that does not require sexual contact with *anyone*, like depicting a "lascivious exhibition" of the minor's genitals under 18 U.S.C. § 2256(2)(A)(v). *United States v. Jimenez*, 158 F.4th 628, 635 (5th Cir. 2025); *United States v. Jakits*, 129 F.4th 314, 325 (6th Cir. 2025); *United States v. Dominguez*, 997 F.3d 1121, 1123 (11th Cir. 2021). Essentially, section 2422(b) is a morals law with a federal-jurisdiction hook; it "criminalizes an intentional attempt to achieve a mental state—a minor's assent—regardless of the accused's intentions" about completing a hands-on offense. *United States*

*v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012) (cleaned up) (Wilkinson, J.). Rather, the "primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *Id.*

In one sense, it was irrelevant whether the supposed nine-year-old girl in this case assented to the sexual activity Brinley planned. "Consent" to sexual intercourse or deviate sexual activity by a child that age would be no defense for Brinley, who was born in 1998. *E.g.*, *Kirwan v. State*, 351 Ark. 603, 96 S.W.3d 724 (2003). But the federal enticement statute required proof that Brinley tried to persuade at least one person *who was a minor* to participate in a crime. Conspiracy under Arkansas law requires proof that at least one person, of any age, *agreed* to plan or commit one. Ark. Code Ann. § 5-3-401(1). The chief evil addressed by conspiracy is the agreement itself:

> It is well settled that the law of conspiracy serves ends different from, and complementary to, those served by criminal prohibitions of the substantive offense. . . . Our decisions have identified two independent values served by the law of conspiracy. The first is protection of society from the dangers of concerted criminal activity.

*United States v. Feola*, 420 U.S. 671, 693 (1975) (citations omitted). Accordingly, there is no such thing as "attempted conspiracy." *E.g.*, *United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984) ("The federal courts follow the bilateral approach to conspiracy . . . under which unless at least two people commit the act of agreeing, no one does."). Even if we assume that Brinley's alleged co-conspirator in this case is the supposed minor herself, the new conspiracy prosecution is different enough from her enticement conviction to avoid

10

the section 114 defense.[6] If we expanded the analysis to include the differing contemplated offenses involved, or the possibility that her alleged co-conspirator is someone else, the differences could only grow.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.

---

[6]Brinley does not argue that Criminal Code provisions that address prosecutions for multiple inchoate offenses, or the scope of inchoate liability, have any relevance here. We express no opinion on that point.